'24 C.C.P.A. (Patents)

## DIETERICH v. LEAF.

### Patent Appeals No. 3773.

Court of Customs and Patent Appeals.

April 5, 1937.

Albert E. Dieterich, of Washington, D. C., pro se.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill. (Robert H. Wendt, of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal in an interference proceeding arising in the United States Patent Office between a patent to the party Leaf, issued October 31, 1933 (for a period of fourteen years), upon an application filed July 31, 1933, and an application of the party Dieterich filed November 7, 1933, the subject-matter being a design for ice cream cones of a "double header" type. Leaf is the senior party, the patent to him having, in fact, been issued prior to the filing date of Dieterich. The Examiner of Interferences and the Board of Appeals concurred in the finding that Dieterich was not entitled to any date earlier than his filing date for reduction to practice. The Examiner of Interferences also held that even if there was reduction to practice by reason of the facts hereinafter related, at the time claimed by Dieterich, there was such "concealment, suppression or abandonment" as to require an award of priority to the senior party, under the case of Mason v. Hepburn, 13 App.D.C. 86.

The latter ground was nowhere alluded to in the decision of the Board of Appeals.[1]

---

[1] In the case of In re Wagenhorst, 64 F. (2d) 780, 782, 20 C.C.P.A. (Patents) 991, we held, in effect, that unless the Board expressly reverses some ground of an Examiner's adverse decision, the Board's general affirmance would be treated as having the legal effect of a rejection upon all the grounds and references cited by the Examiner. This we understand to have been the rule usually followed by the Court of Appeals of the District of Columbia (now the United States Court of Appeals of the District of Columbia), our predecessor in this jurisdiction. The rule, we think, is correct, especially as to prior art references which the Examiner may cite, but we deem it not improper to direct attention to the fact that, in the Wagenhorst Case, supra, we quoted the relevant portion of section

The question of reduction to practice in the instant case may be stated thus: Does the completion of a mere drawing of a design with exhibition thereof to the public constitute reduction to practice of the design?

Peculiarly, in view of the long period (beginning in 1842) during which design patents have been authorized by statute, the question of just what constitutes reduction to practice of a design, although several times the subject of consideration and decision in the Patent Office, does not seem ever to have been definitely defined by any court. See the case of In re William Schnell, 46 F.(2d) 203, 18 C.C.P.A.(Patents) 812, for a review of the design patent statutes.

The particular state of facts here before us is, in substance, as follows: Appellant is a patent attorney. Acting in that capacity, he, beginning in 1929, represented a client by the name of James Balton in the prosecution in the Patent Office of an application for patent for design of an ice cream cone. The application was rejected by the Examiner and appeal was taken to the Board which seems finally to have granted the patent on November 20, 1934. Mr. Dieterich, as attorney for Balton, filed a brief before the Board and in connection therewith filed certain drawings made by himself with which to illustrate his argument. The drawings upon a sheet of paper, designated "Exhibit C to the brief," disclosed four different shapes or forms of cones which are comprised in the drawings of the Dieterich application here at issue. Figure 3 thereof being stated to constitute "the subject-matter of the present application in interference." Exhibit C was filed in the Patent Office, along with the brief, on June 12, 1930, a little more than three years prior to the filing date of the Leaf application. Previous to the exhibit being filed with the brief it, or a sketch like it—Balton thinks the original—was shown to Balton, this occurring according to Balton's testimony, during the last of May, 1930. The testimony of appellant indicates that he also disclosed it to persons in his employ. Appellant stated in his testimony

that his drawings were modifications "of form of the Balton double header cone," and in explaining why he did not earlier file an application for patent said:

"At the time I made up this design in May 1930 I did not consider that it was a matter involving invention as it seemed to me to be simply an obvious modification of the Balton double header cone. However, when I became advised of the issuance of the Leaf patent involved in this interference and found that the Patent Office had apparently considered the design to involve invention I accepted the view of the Patent Office and filed this application, and asked for an interference in order to prove my priority."

Balton testified that cones in conformity with his design were placed on the market commercially about March, 1930 and there are on file as exhibits prints from photostatic copies of advertisements of them, containing pictures of the cones. The photostatic copies, appellant testified, were filed with the brief before the Board in 1930.

We quote the following additional testimony of appellant because it embraces in part the idea expressed in the argument on his behalf upon the question of reduction to practice:

"Q. 4. Did you ever make an ice cream cone of the form disclosed in Figure 3 of Exhibit C, i. e., the form disclosed in the present application in interference? If not why? A. I did not, for the simple reason that in my humble opinion it was not necessary, to make up this form into an actual cone. The Balton double pocket cones constructed as shown in the advertising pages which accompanied the brief before the Board of Appeals in the Balton application, and photostats of which are attached to the certified copy, had both been put upon the market and found to be successful reductions to practice. As the cone which I designed was a mere modification of the form of the Balton double header cone and from a mechanical standpoint in all respects the equivalent thereof there was no necessity for embodying the design which I made into an actual ice

482, R.S.(35 U.S.C.A. § 7), defining the duty of the Board in cases appealed to it, and said, "It would seem that this duty is not fully performed without a review of all adverse decisions by the Examiner." It is, to say the least, quite desirable that there should be a finding by the Board itself upon each question decided by the Examiner which, standing alone, would be determinative of a case, in order to avoid a remand in the event of the court finding itself in disagreement upon the point or points which the Board regards as decisive.

cream cone. The mere making of the drawing or sketch known as Exhibit C attached to the brief before the Board of Appeals and its disclosure to Balton and the Patent Office officials, as well as to those in my employ, I considered to be all the reduction to practice necessary in law in view of the simple nature of the case and the fact that an equivalent structure had already been reduced to practice in the Balton cone."

There is testimony to the effect that the Balton application became involved in two interferences, from which it is supposed it is intended that the inference be drawn that, with the making available to interferents of the Balton file wrapper appellant's sketch was further publicly disclosed.

Appellant contends that a design invention stands on a different footing from mechanical and other inventions, and is so recognized by the statute, and that the making of a sketch, or drawing, clearly showing the design, and its public disclosure, is the equivalent of conception and reduction to practice under the mechanical patent laws, and constitute a completion of the invention under the design patent laws. To this end, he urges that section 4886, R. S., as amended (35 U.S.C.A. § 31), has reference to new and useful inventions in an art, machine, etc., and that section 4929, R.S., as amended (35 U.S.C.A. § 73), has reference to new, original, and ornamental design for an article of manufacture; that it is the ornamentality which is the essential factor, and further that it is design, not the article itself, which constitutes the invention. It is said that the requirement for reduction to practice in patent cases grew up through judicial construction without any statutory authority, there being no statute requiring an inventor to reduce his invention to actual practice and sell it; that it grew out of the difficulties incident to picturing, by drawings, and describing machinery and the like in a manner to disclose the potent factor of operativeness or successful performance of function, and that since design is a matter of appearance the doctrine of reduction to practice by embodying the design in a structure is not applicable. Numerous cases are cited relating even to mechanical patents in which the courts used expressions tending to indicate that in some instances a drawing might be a sufficient reduction to practice.

We think in most of those cases the expressions upon this point constituted dicta. In any event, a mechanical or product or process case in which a drawing alone will constitute actual reduction to practice must be set down as an exception, and a rare one, to the general rule applied modernly and for a long period in the past.

We find that in the Patent Office practice, the tendency has consistently been (the only exception found in such cases as have been brought to our attention being in the matter of a design made on paper for wall paper, a readily understandable exception) to carry into design cases arising under R.S. § 4929, the same rule as to actual reduction to practice as that applied in cases arising under R.S. § 4886, especially with reference to three dimensional articles. Appellant concedes this, but insists that it has been done erroneously. Both the Examiner of Interferences and the Board cited the cases of McArthur v. Gilbert, 1904 C.D. 245, and In re Cady, 1916 C.D. 57. The Examiner cited also the case of Grafton v. Langenbach, 58 Ms.D. 22, in which he states, "A drawing was definitely held not to be a reduction to practice of a design for a metallic finishing plate." The Board regarded the McArthur v. Gilbert Case, supra, as being controlling in the instant case although stating the facts of the two cases not to be identical. It was there held, to quote a syllabus of the decision, that, "A prior mechanical application is not a constructive reduction to practice of the invention disclosed in a later design application filed by the same party."

Few court decisions have been found which seem to have any particular bearing upon the question. The decision in the case of Faris v. Patsy Frok & Romper Co. (C.C.A.) 273 F. 900, in its reasoning may be said to have some bearing, although rather remote. Also the case of Tyler v. St. Amand, 17 App.D.C. 464, and our own cases of In re Schnell, supra, and George N. Mas v. Chapman J. Root, 54 F.(2d) 435, 19 C.C.P.A.(Patents) 819. In the latter case, which involved a design for a bottle, Mas made a drawing of the design in 1920, but never embodied the design in a structure, he relying upon his filing date of September, 1925, for reduction to practice. Root conceived later than Mas, but was prior as to his filing date. Mas was held not to have been diligent from about the time Root entered the field upon September, 1920; hence priority was awarded to Root. If appellant's contention in the instant case be correct, Mas, had he made

public disclosure of his 1920 drawing, might have been entitled to that date for reduction to practice and hence completion of the invention. We did not, however, pass upon the question there, it not having been raised in the reasons of appeal, nor referred to in the briefs or arguments.

We may add that little aid has been derived from such text-books on patent law as we have been able to examine. So far as this court is concerned, therefore, the issue is a matter of first impression.

That appellant's drawing constituted conception seems clear, but is it in accord with the letter and spirit of the design patent statutes to hold that it also constituted reduction to practice? R.S. § 4929 is, of course, based upon the same constitutional provision as R.S. § 4886, and section 4933, R.S. (35 U.S.C.A. § 73), provides:

"All the regulations and provisions which apply to obtaining or protecting patents for inventions or discoveries not inconsistent with the provisions of this [design patent] title, shall apply to patents for designs."

Some expressions in some judicial decisions in the past have possibly had a tendency to confuse the public as to the real nature which a design must disclose in order to render it patentable. We think it is very well understood that the decision of the Supreme Court of the United States in the famous case of Gorham Mfg. Co. v. White, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731, was clarified by the later decision of that court in the case of Smith v. Whitman Saddle Co., 148 U.S. 674, 13 S.Ct. 768, 37 L.Ed. 606. Macomber, in The Fixed Law of Patents (2d Ed.) p. 24, says:

"A true design appeals to something more than the eye in the ordinary sense of that term. It appeals through the eye to the artistic consciousness—not by any particular feature, contour or configuration, or even a collocation of elements, as in the case of a trademark—and awakens a response in the mind of the person possessed of a sense of art. If it falls short of this, if to the person with this sense it is merely peculiar or ornamental, it is not the creation by one mind of that which awakens a reponse in the mind of another, which constitutes true design invention."

We shall not here undertake to say that with reference to certain classes of designs having only two dimensions, such as wall-paper, or the like, a mere drawing of the design upon suitable material may not be sufficient to constitute reduction to practice without the design being embodied in an article of manufacture. It is not required in the case of a mechanical article that the invention shall be embodied in a commercial structure, and it may well be that drawings of designs for flat surfaces might be ample. In the case of a three-dimensional article, however, it seems to us that something more than a mere paper drawing is requisite to constitute actual reduction to practice.

We do not attempt, because the facts of the case do not require it, to define just what may be essential to constitute actual reduction to practice of a design for either a two-dimensional article or a three dimensional article, but that a design, particularly for the latter, should be embodied in some structure other than a mere drawing, we think, is required, particularly under the provisions of R.S. § 4933, supra.

There is no issue as to appellant's diligence here and that question is not before us. Nor is it essential that we pass upon the question of abandonment, concealment, and suppression raised by the Examiner of Interferences.

We concur with the holdings of the tribunals of the Patent Office upon the question of reduction to practice, and the decision of the Board of Appeals is affirmed.

Affirmed.