25 C.C.P.A.(Patents)
### HURD v. SMITH.
#### Patent Appeal No. 3942.

Court of Customs and Patent Appeals.
May 31, 1938.

148

Thomas S. Donnelly, of Washington, D. C. (Eugene E. Stevens, of Washington, D. C., of counsel), for appellant.

The Firm of Charles W. Hills, of Chicago, Ill. (Charles W. Hills, Jr., Charles F. Meroni, and Thomas J. MacKavanagh, all of Chicago, Ill., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

There is here brought before us for review the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority to the party Smith in an interference declared between applications of the respective parties for patents for a locking device to hold a hub cap in place on the wheels of a vehicle such as an automobile.

A single count is involved, the text of which reads: "1. In combination a wheel hub having an opening, a hub cap having a flange for extending through said opening; radially shiftable lock members supported on said cap and said cap flange having guide passageways for the ends of said locking members, an actuating member adapted upon rotational movement to cause radial shift of said locking members to locking or unlocking position, the outer ends of said locking members when in locking position being projected behind the hub wall surrounding the hub opening whereby to lock the cap to the hub, a housing supported by said cap, a rotatable member journalled in said housing and connected with said locking bar actuating member, and means for locking said rotational member against rotation after actuation thereby of said

actuating member to shift said locking members into locking position."

The description of the Examiner of Interferences is as follows: "The invention relates to the use of a lock for holding a hub cap in place to prevent unauthorized removal of the wheel from the automobile. The hub cap, when locked in position, prevents access to the bolts which attach the wheel to the axle or to the carrier. * * *"

The Board of Appeals seems to have treated the invention as being limited to "a lock for holding a hub cap in place to prevent removal of the *spare* wheel from an automobile" (italics ours), but nothing in the count appears so to limit it.

In the brief on behalf of appellant, the following description is given: "The locking mechanism, roughly speaking, embodies radially shiftable lock members which are movable inwardly and outwardly by means of a rotatable locking mechanism mounted on the hub cap. When the key is inserted in the lock, a rotation of the lock barrel will effect an inward and outward movement of these locking members or fingers. When the locking fingers are in locking position they will be projected behind the inwardly turned flange on the hub cap and in order to reach this position it is necessary that the axially directed annular flange which projects outwardly from the face of the saucer-like body have passages or openings formed therein through which the locking members or fingers may project. In the claim in issue, the housing which supports the rotatable lock barrel is defined as mounted on and projecting inwardly from the inner face of the hub cap."

■ Smith is the senior party, his application, serial No. 598,554, having been filed March 14, 1932, while that of Hurd, serial No. 625,753, was filed July 29, 1932. Accordingly, the burden rested upon Hurd to establish his case by a preponderance of the evidence.

■ No testimony was taken on behalf of Smith and so he is restricted to his filing date of March 14, 1932, for conception and reduction to practice. Testimony was taken on behalf of Hurd and the respective tribunals of the Patent Office awarded him a conception date, as expressed by the Examiner of Interferences, "no later than the end of December 1931," but held that no reduction to practice was shown and that he had failed to establish diligence over the critical period from just prior to March 14, 1932, to his filing date of July 29, 1932.

The case has been rendered somewhat complex in the hearing before us by reason of certain proceedings and contentions on behalf of Hurd based upon, or growing out of, a prior Hurd application, serial No. 580,787, filed December 14, 1931. Certain claims in that application were allowed by the examiner; others were rejected by him, and, upon appeal, his decision was affirmed by the Board of Appeals. Hurd thereupon filed a proceeding in equity under R. S. § 4915, 35 U.S.C.A. § 63, and, in December 1936, Justice Luhring of the District Court of the United States for the District of Columbia rendered a decision, Hurd v. Coe, 17 F.Supp. 312, adjudging certain of the claims which had been so rejected to be patentable, and on April 20, 1937, patent, No. 2,077,698, was issued containing all the allowed claims.

Among the claims held patentable by Justice Luhring was one which in the equity proceeding was numbered 10. It appears in the patent as No. 3. It is identical in all respects with the count here involved, except that where the count calls for "radially shiftable lock members" the claim calls for "a radially shiftable lock member." In other words, the claim is satisfied by a single radially shiftable lock member, while the count requires two or more.

The interference here involved was declared February 21, 1933, there being other parties thereto who afterwards were eliminated. The preliminary statement of Smith was filed March 11, 1933. The record does not show the filing date of Hurd's preliminary statement, but it appears that on April 24, 1933, Hurd moved to substitute his application, serial No. 580,787, containing the claim No. 10, hereinbefore alluded to, in place of the application, serial No. 625,753, and to shift the burden of proof. These motions were denied by the examiner. On April 27, 1934, Hurd took an interlocutory appeal to the Board of Appeals, and on that same date filed a motion to dissolve, moving at the same time to stay proceedings on the motion to dissolve until the question of patentability should be determined in the proceeding in equity which he proposed to institute.

It was contended on behalf of Hurd that the involved count would not be patentable over the claim 10 of his prior application. This contention the Examiner of Interferences overruled. In denying the motion to

dissolve, the Examiner of Interferences pointed out that it was made long after the motion period had expired (May 1, 1933), and after other interlocutory motions had been considered and decided. Hurd filed a motion to reconsider and the Examiner of Interferences, in a second decision, after stating that the motion to dissolve was based on the allegation that the count was not patentable over claim 10 of Hurd's prior application, expressly held that it was patentable thereover and again denied the motion, pointing out that no appeal would lie from his decision, because "the denial of this motion does not deny the right of any party to assert the count."

The Board of Appeals affirmed the decisions of the Examiner of Interferences upon the motions to substitute and to stay the proceedings. As to the motion to shift the burden of proof, it was said, in substance, that, in accordance with rule 122 of the Patent Office, no interlocutory appeal would lie from the decision of the Examiner of Interferences thereon. The board declined to consider the question of the patentability of the count over claim 10 of the prior application, saying, "this question is not properly before us, especially as the Examiner of Interferences held the count patentable."

In the appeal to the board from the final decision of the Examiner of Interferences in which priority was awarded to Smith, Hurd assigned errors which caused the board to again discuss and adjudicate certain of the matters dealt with by it in former decisions upon the interlocutory appeals, and in the appeal to us there are assignments seeking to bring those questions before us.

The purport of those assignments is that it was error to deny Hurd's motion to dissolve because the count here involved is unpatentable over claim 10 in Hurd's prior application, and a very large part of the brief on behalf of Hurd is devoted to a discussion of this allegation of non-patentability.

 Shortly after jurisdiction of appeals from the Patent Office was transferred to this court from the Court of Appeals of the District of Columbia (now the United States Court of Appeals for the District of Columbia) we had occasion to pass upon this question in the case of Robert F. Gowen v. William F. Hendry and Robert W.

King, 37 F.2d 426, 17 C.C.P.A., Patents, 789. We there said (page 428):

"The question of the right of a party to secure a patent cannot be raised in this court on appeals in interference proceedings. In such cases the jurisdiction of this court is confined to the question of priority of invention and to such ancillary questions as may be involved therein. [Authorities cited.] * * * These decisions rest upon the proposition that the question of the patentability of an alleged invention is an issue between the applicant and the Patent Office—the Patent Office representing the public. See 35 U.S.C.A. §§ 36, 59. Whereas, the issue of priority of invention and questions ancillary thereto in interference proceedings are matters inter partes. See 35 U.S.C.A. §§ 52, 59. The Congress has provided for separate appeals to this court in these classes of cases."

This rule based upon both reason and authority has been often reiterated and applied by us, and is so well established and so generally understood that no further citation of cases is deemed necessary. We know of no instance in which any court charged with the particular jurisdiction which this court exercises has ever departed from it. In view of its long established character, it is somewhat strange that the issue has been and continues to be seriously brought before us.

In our opinion, there is nothing in the state of facts here presented which takes the instant case out of the operation of this fixed rule of law.

 The count here at issue was deemed patentable by the Primary Examiner, else he would not have declared the interference. Later it was so held by the Examiner of Interferences upon the issue being raised. Assuming that the board might have reversed the decision as to that, the fact remains that it did not do so, and, under the well settled rule, the decision is binding upon us in this proceeding. Our jurisdiction is fixed by statute and the statute makes no provision for an appeal to this court in either an ex parte case or an interference proceeding from a decision of the Patent Office tribunals holding a claim or a count patentable. The only jurisdiction conferred upon this court in an interference case is that of determining priority which sometimes may depend upon ancillary questions, but patentability is not, before us, an ancillary question. In other

words, patentability is conclusively presumed from the decisions of the tribunals of the Patent Office, and we are limited to designating the party to whom, in our opinion, the patent should issue by reason of his being the prior inventor.

Hence all appellant's assignments relating to the allegation of the non-patentability of the count and to the failure to dissolve the interference on that account must be overruled, and we turn to the sole question here involved that is within our jurisdiction—that of priority.

As already stated, Hurd was awarded a date of conception "no later than the end of December 1931," but it was held that he failed to prove actual reduction to practice and also failed to show diligence during the critical period.

The award of conception was based upon a locking wheel cap having three radially shiftable lock members fabricated in the latter part of 1931, introduced in evidence as Hurd's Exhibit 1, and it is upon this exhibit and what was done with reference to it, or a counter part thereof, and its development that Hurd must rely to establish his case.

The Examiner of Interferences found: "There is no testimony by any of Hurd's witnesses to the effect that Hurd Exhibit 1 was ever given a road test on an automobile prior to his filing date * * *."

The board found: "* * * there is no evidence that this exhibit was ever applied to a wheel hub at that time [during the latter part of 1931] and the count calls for the combination of a wheel hub and a hub cap."

These findings are borne out by the record. Indeed, they are not challenged by counsel for Hurd. So, it must be held that no use or test of the device, amounting to an actual reduction to practice, was shown prior to his filing date of July 29, 1932.

It is, however, very earnestly urged by counsel for Hurd, in effect, that by reason of the nature and simplicity of the device, the construction of Exhibit 1 was "in itself a reduction to practice." In the brief on his behalf it is said: "The only movable parts is the key plug with the shiftable lock members or fingers connected eccentrically thereto. To ascertain whether or not the device would work, it would be but necessary to rotate the key back and forth to project and withdraw the locking fingers. This shifting inwardly and outwardly of the locking fingers is the only thing that could require any test."

The examiner's discussion of this contention reads: "* * * It is considered that it [the device] is not of that class of articles of extremely simple construction, the mere making of which is sufficient to establish reduction to practice. The conditions of vibration of normal use might have disclosed defects negativing reduction to practice.

"Moreover, the testimony does not indicate that the construction of Hurd Exhibit 1 would have been satisfactory to the automobile manufacturers without test * * *. Rather the opposite is shown for according to the testimony the caps that were finally sold to the manufacturers varied considerably in detail from Hurd Exhibit 1 * * *."

The Board of Appeals said: "Hurd contends that the very existence of Exhibit 1 is sufficient evidence of reduction to practice of the invention in issue. We are not satisfied to take such view. While the locking device is a comparatively simple device, it has moving parts and it would seem necessary to show these moving parts properly lock against a flange on the wheel hub and that the springs disclosed between the three locking devices sufficiently press the wheel hub against the locking elements to prevent rattling. It is obvious to apply a locking device of this character to an automobile, one of the important features is that the parts interfit properly to prevent rattling. The locking bars should be long enough to fit under the cooperating flange on the wheel hub and yet not be too long. * * *"

While we do not go so far as to hold with the board upon the necessity of a test to show absence of "rattling," we do agree with the holding that the device is not of such a simple nature that no test was necessary. Without reviewing the cases cited in the brief for Hurd in which it was held that actual tests of certain devices were not necessary, it is sufficient to say that we regard the requirements as to those devices to be distinguishable from the requirements as to Hurd's device. Each question of this character must be determined according to the particular nature of the device involved and little or no benefit could result from a review of the analogies and differences present in the respective controversies.

It must, therefore, be held that Hurd failed to establish reduction to practice prior to his filing date of July 29, 1932.

There remains to be considered only the question of whether Hurd has shown diligence during the critical period from just prior to the filing date of Smith, March 14, 1932, until his own filing date.

A careful analysis of the testimony with respect to the activities touching the device conforming to Hurd's Exhibit 1 discloses that efforts were made over a considerable period to exploit it commercially, but, aside from this, which is not sufficient to establish diligence in the sense here required, the record is hazy and indefinite. Practically nothing material is definitely shown as to any testing or modifying or manufacturing of the device, and no satisfactory explanation is offered for the delay in filing a patent application.

Clearly, the concurring findings of lack of diligence on the part of Hurd by the tribunals of the Patent Office are not against the weight of the evidence. There is, in our opinion, practically no evidence which would support a finding to the contrary.

The decision of the Board of Appeals is affirmed.

Affirmed.