25 C.C.F.A. (Patents)

PRESTON et al. v. WHITE.

Patent Appeal No. 3960.

Court of Customs and Patent Appeals.

June 6, 1938.

Myron G. Clear, of Washington, D. C. (Harry F. Riley and Geo. C. Shoemaker, both of Washington, D. C., of counsel), for appellants.

Jerome R. Cox, of South Bend, Ind. (Francis P. Keiper, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office reversing the decision of the Examiner of Interferences, and awarding priority of invention of the subject matter defined in the counts in issue—Nos. 1 to 8, inclusive—to John W. White, appellee.

The invention relates to a hydraulic brake system for vehicles in combination with a hydraulically actuated stop light electric switch. The combination is sufficiently described in the counts in issue, of which count 1 is illustrative. It reads: "1. In combination, a hydraulic brake system that includes a master control container, means for forcibly contracting at will the control container, liquid operated brakes, piping leading from the interior of said master control container to said brakes, and an incompressible liquid within and filling the master control container and the pipes leading therefrom to the brakes; an electric system that includes a source of current supply, a signal and an electric switch having a movable contact member controlled as to switch opening and closing movements by a positionable member of a switch control container; and said switch control container that provides said positionable member for controlling the switch opening and closing movements of the movable contact according to pressure conditions of the incompressible liquid within the switch control container; said switch control container being in direct communication with the liquid containing space of the hydraulic brake system whereby upon force being applied in a manner to effect a contracting of the master control container there simultaneously results an increase in the pressure of the liquid and which increase of pressure is exerted against the movable member of the switch control container as well as against the brake parts that are under the direct influence of the incompressible liquid in the hydraulic brake system."

The interference is between appellants' patent No. 1,946,759, issued February 13, 1934, on an application, No. 364,266, filed May 18, 1929, and appellee's application No. 718,863, filed April 3, 1934. Appellee's application is a division of his application No. 317,933, filed November 8, 1928.

Appellants are the junior parties and the burden was upon them to establish priority of invention by a preponderance of the evidence.

It appears from the decision of the Examiner of Interferences that appellee's prior application, No. 102,701, filed April 17, 1926, which matured into patent No. 1,744,940 January 28, 1930, also disclosed the involved invention.

However, counsel for appellee states in this court that, in view of the issues here presented, it is of no consequence whether appellee be granted the date of the filing of his first application (April 17, 1926) or the date of the filing of his application No. 317,933 (November 8, 1928), of which his involved application is a division, for conception and reduction to practice.

Appellee submitted no evidence, and is, therefore, restricted to the filing date of one of those applications for both conception and reduction to practice.

Appellants filed an application—No. 94,105—March 12, 1926, containing a claim for a hydraulic brake system in combination with a hydraulically actuated stop light electric switch, and also claims for the electric switch per se. Division between the claims for the electric switch per se and the claim for the combination was required by the Primary Examiner, and, on March 24, 1927, appellants canceled the combination claim, and elected to prosecute in that application claims to the electric switch per se.

Due to the failure of appellants to respond timely to a Patent Office action, that application became an "abandoned application" on February 20, 1928, at which time

appellants' application contained no claims to the invention here in issue.

Appellants' involved application also contained claims for the combination of a hydraulic brake system and the electric switch, and claims for the electric switch per se. Division was required by the Primary Examiner on December 6, 1929: (Shortly thereafter, on January 28, 1930, appellee's patent No. 1,744,940 was issued on application No. 102,701, filed April 17, 1926. The claims in that patent are for a hydraulic electric switch per se.) In response to the requirement of division, appellants elected to claim in the involved application a hydraulic brake system in combination with their hydraulic electric switch, and a patent, the one here involved, was issued to them containing claims for the combination only.

We have briefly related the history of events preceding the declaration of the interference so that the evidence introduced by appellants may be clearly understood and properly applied to the issues in the case.

Counsel for appellants contend that appellants conceived the invention and successfully reduced it to practice during the period from August 31, 1924 to September 3 of that year; that they filed an application fully disclosing and claiming the invention on March 12, 1926; that, although that application was abandoned, appellants never abandoned the invention nor ceased in their efforts to secure patent protection therefor; that their original application was not abandoned through negligence on their part, but merely through inadvertence; that, due to financial difficulties, they were unable to file a new application for the invention prior to the time of the filing of the one here involved; that, if the court should hold that appellants failed to reduce the invention to practice in 1924, the record clearly establishes that they were diligent in an effort to reduce it to practice since immediately prior to the time appellee entered the field; and that, therefore, appellants are entitled to an award of priority.

As herein before noted, the tribunals of the Patent Office disagreed as to the proper conclusion to be reached from the evidence in the case; the Examiner of Interferences holding that appellants had successfully reduced the invention to practice' in 1924, and that, therefore, the question of diligence was not in the case. The Board of Appeals was of opinion that the evidence

was insufficient to establish a successful reduction of the invention to practice in 1924; that appellants had failed to establish diligence in reducing the invention to practice subsequent to the abandonment of their original application; that such abandonment was not through inadvertence, but was due to their negligence; and that no attempt was made to have that application revived, which might have been done.

In its decision denying appellants' petition for rehearing, the Board of Appeals called attention to the fact that appellants, with nominal expense, could either have made a response to the examiner's action so as to have prevented their original application becoming abandoned, or, subsequent to such abandonment, could have filed a petition for the revival of that application. The board further stated that "Inasmuch as White has a date of November 8, 1928, at least, and has been conceded by Preston et al. to have a date of April 17, 1926, it is obvious that White must prevail, since the party Preston et al., due to their lack of diligence are not entitled to a date earlier than May 18, 1929."

From what has been said, it must have been clear to appellants and their counsel at the time of the taking of the testimony in this case that the testimony should relate to a hydraulic brake system in combination with a hydraulically actuated stop light electric switch, and not merely to the electric switch per se.

It appears from the evidence of record that appellants, in 1924, operated a garage in Hornell, New York; that they had the agency for the Jordan automobile in that territory; that a considerable portion of their business was that of repairing automobile brakes; that at that time hydraulic brakes in combination with a mechanically operated stop light switch were being used by but two automobile manufacturers; and that in the late summer or early fall of that year appellants received for sale a Jordan Straight Eight, which was equipped with hydraulic brakes and a mechanical stop light switch. It was the first Jordan Straight Eight received for sale in that territory.

It appears from the testimony of the appellants that they conceived and constructed the stop light switch (Exhibit A), which corresponds to the switch element in the counts in issue, and attached it to the hydraulic brake system on the Jordan Straight Eight on or about August 31, 1924;

that the switch was attached to the hydraulic brake system by removing a plug on the brake lines, screwing the stop light switch in place, and connecting the wires on the original mechanical stop light switch to appellants' switch. Each of the appellants testified that their stop light switch operated; that is, when the brakes where applied, the light went on, and when the brakes were released the light went off, thus clearly indicating that the hydraulically actuated stop light switch operated successfully.

The issue before us is not whether the stop light switch operated successfully, but rather whether the brake system and the stop light switch in combination operated successfully.

It appears that the Jordan Straight Eight was used as a demonstrator by appellants in an effort to sell it, and that it was driven about the streets of Hornell, New York, for that purpose. Whether the stop light switch operated successfully in combination with the brake system of the Jordan car does not clearly appear even from the testimony of appellants, neither of whom was asked directly concerning the successful operation of the combination.

The witness Kenneth D. Preston stated that the Jordan Straight Eight was used for demonstration purposes; that when the brakes were operated the switch operated; and that others had seen him operate the brake system in combination with the stop light switch.

The witness Hamilton W. Preston stated that the brakes on the car were operated under both normal and abnormal conditions, and that appellants had "accomplished a fully enclosed dependable means of signaling when a stop was to be made."

Appellants' witnesses John A Hunter, Charles W. Stoddard, and Thomas H. McGreevy testified that they witnessed a demonstration of the application of pressure to the brake pedal of the Jordan car, and that such pressure operated appellants' stop light; that is, when the pressure was applied, the light went on, and when the pressure was removed, the light went off. Not one of those witnesses testified, however, that he had operated the brake pedal or had seen it operated while the car was in motion.

We think the testimony of those witnesses in conjunction with the testimony of appellants is amply sufficient to establish that appellants' stop light switch (Exhibit A) was attached to the Jordan car in the manner hereinbefore described, and that the stop light switch itself operated successfully. We are unable to hold, however, that there is any corroborating evidence tending to establish that the brake system and appellants' stop light switch in combination operated successfully.

It is true that the witness McGreevy stated that pressure applied to the brake pedal caused the stop light to operate the same as it did the brakes, but there is nothing in his testimony to indicate that he actually witnessed a demonstration from which it might be determined that the brake system and appellants' stop light in combination operated successfully. The testimony of appellants' witnesses was taken approximately eleven years after the happening of the events concerning which they testified. In view of the history of appellants' applications prior to the declaration of the interference, it is evident that if any one of their witnesses was able to recall a demonstration which showed a successful operation of appellants' stop light switch and the brake system in combination he would have been asked to so testify. However, appellants' witnesses were not even interrogated on that subject.

It is argued, in effect, that it is reasonable to assume that if the stop light switch worked when attached to the brake system of the Jordan car the two worked successfully in combination. That assumption was indulged by the Examiner of Interferences; it being his theory that as the Jordan car was operated as a demonstrator, and as the hydraulic brakes were a novelty at that time, the brakes were probably operated frequently.

We must decline to assume the existence of facts which should have been established by evidence in the case. Nor do we deem it necessary to attempt any explanation as to why the combination of appellants' stop light switch and the brake system of the Jordan car might or might not have worked successfully.

We must hold, therefore, that the evidence is wholly insufficient to establish that during the period from the latter part of August to September 3, 1924, when the Jordan car was sold by appellants, or at any time thereafter, appellants actually reduced the involved invention to practice.

**164**

As hereinbefore noted, appellants' application, filed March 12, 1926, became abandoned February 20, 1928, and can not be considered in the instant case as a constructive reduction to practice. Carty **v.** Kellogg, 7 App.D.C. 542.

The question presented, therefore, is whether appellants were diligent in reducing the invention to practice immediately prior to November 8, 1928, at which time appellee's original application, of which his involved application is a division, was filed.

It is argued by counsel for appellants that the abandonment of their original application was not due to their negligence, but was due to the "direct result of failure of their attorney to file a response to the official action of August 20, 1927. The attorney's excuse was that he did not have his file papers in hand, but it is well known he might, through a Washington associate, have had a response made from the official file in the Patent Office. The attorney's file was in the hands of Edward Augustine of Buffalo, for the purposes set forth in the stipulated testimony of Mr. Augustine * * *. The letter notice of abandonment of the attorney Valk * * * speaks for itself and nothing appears to show the Prestons had any intention of abandoning the application or the invention." (Italics ours.). It appears from the testimony of Mr. Augustine that he had possession of appellants' attorney's "file" for the purpose of "attempting to raise money for the Preston brothers upon the basis of the invention included in * * * (their) application."

Appellants' Exhibit C is a letter dated February 28, 1928, from their then patent attorney William Valk, Jr., addressed to the Preston Motor Car Company, Hornell, New York, wherein it is stated that each official action of the Patent Office relative to appellants' original application was required to be answered within six months; that such information had been previously imparted to appellants; that the last Patent Office action was on August 20, 1927; that a reply thereto was due not later than February 20, 1928; that he was unable to respond to the last Patent Office action because he did not have a copy of it before him; that he had written appellants on December 7, 1927, requesting the return of his file or papers in the case (which included a copy of the last Patent Office action), but that appellants had failed to return it; that appellants' application was technically abandoned, and the "only way in which the application" could "be reopened" was "by filing anew"; and that such renewal would necessitate the payment of the customary filing costs. Mr. Valk concluded his letter with the following statement: "As such abandonment is entirely due to a lack of cooperation on your part, I presume it is your intention to have me discontinue my effort toward securing for you an allow-, ance. If the contrary is the' case, you should advise me at once of your desires in the matter."

It is apparent from that exhibit that appellants' then attorney was definitely of opinion that appellants had not cooperated with him in the prosecution of their original application.

We find nothing in the stipulated testimony of Mr. Augustine to indicate that appellants' attorney Mr. Valk was in error when he stated that the abandonment of appellants' application was due to their failure to cooperate with him.

There is evidence to the effect that appellants were in financial difficulties at the time of the abandonment of their original application and prior and subsequent thereto.

One of the joint inventors, Kenneth D. Preston, testified that subsequent to the abandonment of their original application he tried to obtain money from the witness Mellinger and others to finance the filing of a new application, and that he finally obtained the money from Mr. Mellinger.

The witness Hamilton W. Preston, however, in answer to the query "What were you trying to get Mr. Mellinger to do?" replied: "Fundamentally, we were trying to get Mr. Mellinger to put some money with us to get this device marketed or on the market."

Mr. Mellinger testified that on several occasions appellants requested loans in small amounts; that during 1926 and 1927 they requested him to help them regarding "their patent"; that in the spring of 1927 he went to Buffalo with appellants where they interviewed a friend of his who was mechanically inclined and was also interested in patent matters; that sometime in 1928 and 1929 he advanced small sums of money to appellants for some legal work; that he advanced about $200 "all told for this legal work and the incidental expenses of driving over, back and forth, and hotel and so on"; and that he lost interest in appellants'

affairs when Mr. Simms, who was then acting as attorney for appellants, died sometime in 1929 or 1930.

We deem it unnecessary to state in detail all of the testimony of Kenneth D. Preston relative to his efforts to secure money to aid him in the exploitation of the invention. It may be observed, however, that he testified that from November 1927 until the involved application was filed by appellants and thereafter, he was receiving a salary of $35 per week from the Peck Hardware Company, and that a part of his salary was used to pay off some of appellants' prior indebtedness.

Hamilton W. Preston, one of the joint inventors, testified that from the spring of the year 1928 until his departure for Florida in the latter part of that year, his time "was entirely devoted to converting into cash as far as possible everything we could liquidate to satisfy the loans made against us," and that after his departure he heard nothing more about the "possibility of filing a second application" until he received papers for his signature. Although the papers referred to by the witness undoubtedly related to the filing of the involved application, he did not so state, nor did he state when he received them. There is no evidence, therefore, that he made any effort to reduce the invention to practice or to file a patent application subsequent to the abandonment of the original application. Nor is there any evidence of record to establish that either of appellants made any effort to secure the cooperation of their attorney Mr. Valk in having their abandoned application revived or in the filing of a new one. That the abandonment of appellants' application was due to their negligence and not that of their attorney Mr. Valk, would seem to be clear from Mr. Valk's letter (appellants' Exhibit C).

Although Kenneth D. Preston testified that he tried to interest several individuals and companies in the filing of a new application to take the place of appellants' abandoned application, and from time to time tried to get the witness Mellinger to advance sufficient money for that purpose, there is no evidence to corroborate his testimony that he made any effort to secure money from the witness Mellinger or from anyone else for that purpose at or immediately prior to the time of the filing of appellee's application (November 8, 1928), or at any other specified date subsequent to the abandonment of the original application and prior to May 1929, at which time, he stated in an affidavit of record, he secured a sufficient sum of money from the witness Mellinger to prepare and file a new application.

It has been established that appellants were attempting to raise money from the witness Mellinger and through the efforts of the witness Augustine to put their device on the market, and we think it clearly appears that there was no intention on their part to abandon the invention. However, evidence of efforts toward commercial exploitation of an invention is not evidence of diligence in reducing it to practice. Petersen v. Thomas, 56 App.D.C. 113, 10 F. 2d 908. Furthermore, the evidence is wholly insufficient to establish that appellants were unable to pay the necessary expense of the preparation and prosecution of an application to take the place of their abandoned application at or immediately prior to the time appellee filed his application, or at any time thereafter. The plea of poverty as an excuse for appellants' failure to file a patent application under the related circumstances can not be sustained. See Grabowsky v. Gallaher, 39 App.D.C. 548.

The evidence of record is wholly insufficient to establish that appellants were diligent in attempting to reduce the invention to practice at and immediately prior to the filing of appellee's original application (November 8, 1928), and thereafter, until they filed their involved application.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.