46 CCPA

**Warren W. FITZGERALD**

v.

**ARBIB et al.**

**Patent Appeal No. 6450.**

United States Court of Customs and Patent Appeals.

July 16, 1959.

**764**

Boyken, Mohler & Wood, Mark Mohler, San Francisco, Cal. (Gordon Wood, San Francisco, Cal., of counsel), for appellant.

J. T. Basseches, New York City (Mark T. Basseches, New York City, of counsel), for appellees.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK [1].

MARTIN, Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention of the involved subject matter to the senior party, Arbib et al., appellee here. The interference involves Design Patent No. 175,143, granted to Arbib et al. on July 19, 1955, on an application filed November 4, 1954, and an application of the junior party Fitzgerald, Design Serial No. 36,893, filed on July 11, 1955. The invention in issue is an ornamental escutcheon plate for a lock.

■ Since Fitzgerald's application was copending with that of Arbib et al., he has the burden of proving priority by a preponderance of the evidence. Gaiser v. Linder, 253 F.2d 433, 45 CCPA 846. Arbib et al., having taken no testimony, are confined to their filing date for conception and reduction to practice.

Fitzgerald submitted evidence showing a completion of a pencil drawing of the design in issue on May 21, 1954, a colored drawing thereof on June 3, 1954, an orthographic layout on December 2, 1954, a dimensioned detailed drawing for making an actual escutcheon dated January 13, 1955, and a wooden pattern on March 22, 1955.

The Board of Patent Interferences held, as a matter of law, that the May 21 and June 3 drawings were evidence only of conception and not of a reduction to practice of the invention here in issue. The Board found the decision of this court in Dieterich v. Leaf, 89 F.2d 226, 24 CCPA 1138, to be a controlling authority standing for the proposition that to have an actual reduction to practice " * * * in the case of a design for a three-dimensional article, it is 'required' that it 'should be embodied in some structure other than a mere drawing' * * *." The Board further held that the evidence was insufficient to show that Fitzgerald exercised reasonable diligence toward reducing the design to practice from a date just prior to November 4, 1954, when the senior party filed, until March 22, 1955, when Fitzgerald completed the wooden model of the escutcheon.

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'Connell, pursuant to provisions of Section 294(d), Title 28 United States Code.

Appellant contends that the drawings in question constitute reductions to practice of the invention and that, accordingly, the rule in Dieterich v. Leaf, supra, should be narrowed to its particular facts, or in the alternative, overruled. It is urged that the rough line drawing in that case "did not disclose with the necessary fidelity 'the intended effect on the eye of the observer' * * *" of the design for the ice cream cones there involved, whereas the eye-pleasing multicolor perspective drawing of June 3, 1954, fully discloses the invention here in issue.

Appellant further claims that, even should the drawings be held not to constitute reductions to practice of the invention in issue, the record evidences reasonable diligence during the critical period and therefore he is entitled to a finding of priority.

The color drawing of June 3, 1954, depicts the design very attractively and gives a better picture of the artist's conception than the original pencil drawing. However, this drawing does not constitute a completion of the invention any more than the original drawing because of the further activity necessary to produce a physical embodiment of the design.

The dimensioned detail drawing, showing both elevation and plan views, which was prepared by appellant in December, 1954, after the senior party filed, to be used by the pattern maker, and the pattern itself, demonstrate how much more activity was necessary.

Also, appellant's own statements concerning the design indicate that he found many problems in working with it and anticipated more before a physical embodiment of the design could be realized. For instance, he stated:

"I had numerous conversations and visits to foundries and I was extremely interested in the shell molding process as having possibilities of [sic] high as cast finish on this; *because it was obvious that the intricacies of this design would pose serious finishing problems; and*

*I felt that if the design were to succeed, it would have to reach the finishing process in a high—in a relatively high state of surface smoothness; otherwise it would be prohibitive to manufacture."* [Emphasis added.]

He further testified that the dimensioned drawing was:

"* * * what we call a sketch drawing, which is our initial experimental drawing prior to developing the production drawings; and this is done for the purpose of obtaining castings for this design, *so that it can be examined in the round, as it were."* [Emphasis added.]

Appellant argues in his brief:

"* * * the design is an intricate one that could not be made without careful planning, not only as to dimensions of the same, but also as to the material required and the process of manufacture."

We take no issue with the conclusion that the aforesaid drawings are sufficient to evidence the "formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice" and therefore constitute a conception within the meaning of the law. Mergenthaler v. Scudder, 11 App. D.C. 264, 1897 C.D. 724; see also In re Tansel, 253 F.2d 241, 45 CCPA 834, and cases there cited.

■ In similar circumstances, this court and its predecessor in patent jurisdiction have held that the reduction to practice of a three-dimensional design invention requires the production of an article embodying that design. Tyler v. St. Amend, 17 App.D.C. 464, 1901 C.D. 301, 94 O.G. 1969; Dieterich v. Leaf, supra. Under this law, the drawing of June 3, 1954, was not an actual reduction to practice of the invention in issue by Fitzgerald.

Aside from the above mentioned case law, appellant's own testimony, as hereinabove set forth, indicates how much more was needed to perfect or complete

the invention, not in terms of mental activity, but in the sense of actually making an article embodying the design, available for use by the public.

As to the question of the exercise of diligence from a time prior to the appellee's entry into the field, 35 U.S.C. § 102(g) provides:

"In determining priority of invention there shall be considered * * * the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time *prior* to conception by the other." [Emphasis ours.]

■ It has been held that a party has not exercised reasonable diligence in reducing the invention to practice where there is unexplained inactivity prior to the opponent's entry into the field, for periods as abbreviated as one to two months in duration. Brown v. Barton, 102 F.2d 193, 26 CCPA 889; Scharmann v. Kassel, 179 F.2d 991, 37 CCPA 903; Morway v. Bondi, 203 F.2d 742, 40 CCPA 917; Rieser v. Williams, 255 F.2d 419, 45 CCPA 953.

■ With reference to the activity of appellant during the critical period, the record reveals that after making the color drawing on June 3, 1954, he took no other steps toward reducing the invention to practice until he prepared the orthographic drawing on December 2, 1954, which was nearly a month *after* the senior party had entered the field. Certainly, this inactivity shows lack of diligence during the critical period, which period began just prior to appellees' November 4, 1954, filing date.

Appellant testified that during this period he made an investigation as to how the design might be manufactured for commercial use. Such activity, however, cannot establish reasonable diligence during the critical period. In this connection, this court stated in Burns v. Curtis, 172 F.2d 588, 591, 36 CCPA 860:

"It is well settled that efforts to exploit an invention commercially do not constitute diligence in reducing

it to practice. See Hurd v. Smith, 97 F.2d 147, 25 CCPA 1137; Preston v. White, 97 F.2d 160, 25 CCPA 1219; and Petersen v. Thomas, 56 App.D.C. 113, 10 F.2d 908."

Other witnesses called to testify on behalf of appellant do not convince this court that he was reasonably diligent concerning this invention during the critical period or, as a matter of fact, at any time from June, 1954, to December, 1954. Appellant's activity toward reducing the design to practice really began after the senior party had entered the field; the orthographic drawing was made on December 2, 1954, the dimensioned drawing on January 13, 1955, and the pattern manufactured on March 3, 1955. Of course, this activity avails appellant naught in support of his contention of reasonable diligence but, conversely, it demonstrates that he was not diligent during the critical period. These actions were necessary to complete his work; but as they were subsequent to appellee's filing date, they have no legal effect. The unexplained inactivity prior to December, 1954 is fatal to appellant's contention.

Furthermore, there is nothing in the record which can support a finding that appellant exercised reasonable diligence during the critical period in effecting a *constructive* reduction to practice of the invention here involved.

For the above reasons, the decision of the Board of Patent Interferences is affirmed.

Affirmed.

WORLEY, Chief Judge, did not participate in decision because of illness.

RICH, Judge (concurring).

I agree with the result reached in Judge MARTIN'S opinion. I also agree that appellant did not establish diligence, assuming that he had to. But appellant's principal argument is that his colored drawing of June 3, 1954, prior to the November 4, 1954 filing date of Arbib et al., on which they stand, should

be accepted as an actual reduction to practice, in which case Fitzgerald would not have to establish diligence.

I would not be satisfied to affirm in this case unless I felt that there is a good answer to appellant's contentions. I think there is and I do not therefore, rest my opinion merely on the rule of stare decisis and the case of Dieterich v. Leaf, 89 F.2d 226, 24 CCPA 1138, decided in 1937.

Appellant asks us to overrule or strictly limit the Dieterich case to its precise facts on the ground that it merely carries over into the field of designs the rules respecting actual reduction to practice in mechanical and similar cases, producing absurd results. The argument in support of this contention is that a design invention relates only to an impression made upon the eye of an observer and therefore a drawing which fully discloses that impression ought to be counted an actual reduction to practice. Appellant's first example of the absurdity of a contrary rule is that his colored drawing, Exhibit 2, discloses his invention much more clearly than the drawings of his patent application, which constitute a constructive reduction to practice. His next example of absurdity is that said exhibit, in full color perspective, actually gives a much better impression of what the applied design looks like than the wooden pattern, Exhibit 5, assuming the latter to be an acceptable reduction to practice. Personally, I think the colored rendering gives the observer practically as complete an idea of the design invention as would viewing the finished commercial embodiment of it. But I do not think the rule of the Dieterich case, which we have decided to follow, produces absurd *legal* consequences, though it is possible by plausible argument to make the rule look logically absurd.

The trouble with appellant's argument is that he makes the wrong assumption about the reason behind the rules relating to actual reduction to practice of non-design inventions. It is not true that the sole basis for the rules as to actual reduction to practice is the *necessity* of establishing that the invention will work, as he alleges. This puts the cart before the horse. There is no such necessity, as witness the effect of a patent application. While one cannot prove actual reduction to practice without establishing operativeness, in the case of a non-design invention, the real question is why there is such a rule and why there should be a rule that drawings cannot be a reduction to practice of a design for a three-dimensional article. There are also situations in which non-design inventions can be better understood from drawings than from seeing a physical embodiment of the invention, as anyone will realize who has seen a radio repair man, with a commercial radio in front of him, turn to the manufacturer's circuit diagram to find out how the set is built and operates. But this is no reason for holding that as between two radio inventors the first to make a circuit diagram should be awarded priority, though the same diagram will suffice for a patent application, which will be given the same legal effect as an actual reduction to practice. This, too, could be made to seem an absurd situation, logically.

The seeming absurdity is removed by taking into account the fact that awards of priority in contests between rival inventors are made on policy grounds and that the rules we now have grew from the application of policy considerations. For example, in the case of Mason v. Hepburn, 13 App.D.C. 86, 1898 C.D. 510, the inventor proved to have been the last to make the invention was held to be the "real inventor" or "the first inventor in the sense of the law regulating the grant of patents."[1] In support of this seemingly anomalous result the court quoted

---

[1] It is interesting to note that in Mason v. Hepburn, 13 App.D.C. at p. 89, it was said, "It is settled beyond all question, that a drawing of even the simplest machine or device, perfect in every detail, and plainly demonstrating the principle, efficacy and practical utility of the invention, will not constitute reduction to practice."

from Kendall v. Winsor, 21 How. 322, 16 L.Ed. 165, to show that the patent laws are so construed as to promote progress in the useful arts, and concluded by saying:

"The true ground of the doctrine, we apprehend, lies in the *spirit and policy of the patent laws* and in the *nature of the equity that arises* in favor of him who *gives the public the benefit* of the knowledge of his invention, who expends his time, labor, and money in discovering, *perfecting, and patenting* in perfect good faith that which he and all others have been led to believe has never been discovered by reason of the indifference, supineness, or wilful act of one who may, in fact, have discovered it long before." (Emphasis mine.)

Through the years policy has led to the rule that filing an allowable patent application shall be treated as a reduction to practice. It is an important step in giving the public the benefit of knowledge of the invention. Likewise the building and successful testing of a device has been given similar legal effect, but this effect may be lost by abandonment, suppression or concealment. See 35 U.S.C. § 102(g). Again, the policy consideration would seem to be that there has been sufficient progress in the direction of getting the invention into the hands of the public.

Notwithstanding dicta in a very few cases and corresponding statements in some old texts to the effect that drawings may be enough to constitute reduction to practice, all recent and much early authority is to the effect that they are not. The Dieterich case decided that they are not a reduction to practice of a three dimensional design. I am in favor of adhering to that rule for two policy reasons.

First, in all respects except one, the patentability of designs is subject to the same law as other inventions. 35 U.S.C. § 171, second paragraph. That one difference is that designs must be "ornamental" whereas other inventions must be "useful." Compare sections 101 and 171. I therefore think it is desirable, simply for the sake of uniformity, to have the same rules as to actual reduction to practice with respect to all types of inventions obtaining protection under Title 35 of the United States Code.

Second, since we do not necessarily give the patent to the first inventor in fact anyway, I think it is sound policy to require, even in the case of a design invention, that an actual reduction to practice, which may prevail over one who has filed a complete allowable patent application, be based on something more than a drawing, no matter how completely that drawing may be capable of disclosing the invention. My legal conclusion is, therefore, that a "design for an article" under section 171, is not actually reduced to practice until it is embodied in the article. It is then much further on its way to the public as a commercial article than when it is in the drawing stage and such embodiment may reasonably prevail over the disclosure of a later filed patent application. Such a rule is in accord with the basic purpose of the patent system, which is to promote progress in the useful arts, not primarily to reward inventors. Motion Picture Patents Co. v. Universal Film Manufacturing Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871.