# SEEBERGER *v.* DODGE.

PATENTS; INTERFERENCE.

1. Ordinarily in an interference case the decision of the Patent Office in respect of the identity of the inventions of the parties will be accepted by this court as conclusive,—especially where the invention is one of elaborate and complicated mechanism (following *Stone* v. *Pupin,* 19 App. D. C. 396; *Schupphaus* v. *Stevens,* 17 App. D. C. 548; *Ostergren* v. *Tripler,* 17 App. D. C. 557; *Luger* v. *Browning,* 21 App. D. C. 201; and *Herman* v. *Fullman,* 23 App. D. C. 259) ; but in extreme cases, where palpable error has been committed, such a decision may be reversed (following *Swihart* v. *Mauldin,* 19 App. D. C. 570) ; and, under certain circumstances, a decision of the Commissioner will be reversed where one party has been permitted to broaden his application for a

specific invention into a generic one, and thereby dominate another and different specific invention contained in the later application of another.  (Following *Bechman* v. *Wood*, 15 App. D. C. 484.)

2. But a contention by the junior party to an interference that the invention as claimed by him was not disclosed or claimed in the original application by the senior party, and was only introduced therein by amended claims made after the junior party's application had been filed, and that, therefore, the senior party is not entitled to the benefit of a constructive reduction to practice as of the date of filing,—cannot be sustained where, from an examination of the proceedings in the Patent Office, showing, among other things, various amendments made by the senior party to meet references to other patents, it appears that such amendments were within the scope of his application and the accompanying drawings, and were therefore properly allowed.  (Following *Hulett* v. *Long*, 15 App. D. C. 284; *McBerty* v. *Cook*, 16 App. D. C. 133.)

3. Where the junior party to an interference was the first to conceive, but the last to reduce to practice, the burden is on him to show that, immediately before his rival entered the field, and at that time, he was exercising due diligence in perfecting his invention and attempting to reduce it to actual practice.

4. Where, in an interference case involving the invention of an escalator, or moving stairway, it appeared that S. conceived the invention in May, 1895, and had such complete drawings made in the summer of 1896 that he could have filed an application for patent at that time, but did not do so, or reduce the invention to actual practice, or even test it, until after D. filed his application in January, 1898, although the evidence showed that, if he had done so, it would have been operative,—it was *held* that S. was lacking in diligence.

5. One having the first complete conception of an invention cannot hold the field against all comers by diligent efforts merely to organize and procure sufficient capital to engage in the manufacture of his device or mechanism for commercial purposes.  This is a different thing from diligence in actual reduction to practice.  (Following *Wyman* v. *Donnelly*, 21 App. D. C. 81.)

6. Although actual reduction to practice is preferable to constructive reduction to practice, as more to the interest of the public, and a reasonable indulgence ought to be extended to one attempting in good faith to actually reduce to practice, yet, when the construction of an experimental device involves so great cost and risk that an inventor, although possessed of sufficient means, may well hesitate to undertake the same entirely at his own expense, due diligence requires that he should then attempt to secure his rights and promote the public interests by filing an application for patent.  (Following *Platt* v. *Ship-*

*ley,* 11 App. D. C. 576; *Dodge* v. *Fowler,* 11 App. D. C. 592; *Marvel* v. *Decker,* 13 App. D. C. 562; and *Cross* v. *Phillips,* 14 App. D. C. 228.)

7. A delay by an inventor in reducing his invention to practice and applying for a patent is not to be excused because of his supposition that prior patents in which he had an interest were sufficiently broad to include the invention. (Following *Platt* v. *Shipley,* 11 App. D. C. 576.)

No. 269.   Patent Appeals.   Submitted November 18, 1904.   Decided January 3, 1905.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                 *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. J. McRoberts, Mr. C. E. Foster,* and *Mr. F. L. Freeman* for the appellant.

*Messrs. Howson & Howson* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference case.   The issue involved reads as follows:

"1. In a device of the class described, the combination with the series of connected steps, of ways in which said steps travel, and a driving mechanism intermediate the ends thereof engaging with both the ascending and descending parts of said series.

"2. In a device of the class described, the combination with a series of steps, of ways in which said steps travel, of a sprocket chain connecting said steps, and a sprocket wheel interposed between the ascending and descending series of said steps intermediate the ends thereof and meshing with said chain on both sides.

"3. In a device of the class described, the combination with a series of steps, and ways in which said steps travel, of a

sprocket chain connecting said steps, a sprocket wheel interposed between the ascending and descending series of said steps intermediate the ends thereof and meshing with said chain on both sides thereof, and means for applying power to said sprocket wheel to drive the steps.

"4. In a device of the class described, the combination with the moving sections, of guides for said sections stationary relative to the movement thereof supporting said sections at both ends throughout their entire course, and driving mechanism engaging the sections between the two ends of the course and at a point where they change direction of movement, said driving device also engaging the sections on the return run.

"5. In a device of the class described, the combination with the sections moving throughout their course in a single vertical plane, of guides for said sections stationary relative to the movement thereof and supporting them at both ends throughout their entire course, and driving mechanism engaging the sections between the two ends of the course and at a point where they change direction of movement, said driving mechanism also engaging the sections on the return run.

"6. In a device of the class described, the combination with the sections moving throughout their course in a single vertical plane, of guides for said sections stationary relative to the movement thereof and supporting them at both ends throughout their entire course, and driving mechanism engaging the sections between the two ends of the course and at a point where they change direction of movement, said driving mechanism consisting of a sprocket wheel engaging said steps on both the forward run and return run.

"7. The combination in a moving platform or stairway, of the moving steps, tracks therefor, and a driving mechanism engaging the steps between the two ends of the platform or stairway and at a point where they change direction of movement, said driving device also engaging the steps on the return run, substantially as described.

"9. The combination in a moving platform or stairway, of moving sections, guides therefor, and a driving device engaging

the sections, between the two ends of the platform or stairway and at a point where they change direction of movement, said driving device also engaging the sections on the return run, substantially as described.

"10. In a device of the class described, the combination with an endless carrier of guiding and supporting mechanism for said carrier, and driving mechanism intermediate, the ends thereof engaging with both the ascending and descending portions of said carrier."

The application of the appellant, Charles D. Seeberger, was filed October 22, 1901; that of the appellee, James M. Dodge, on January 22, 1898. To sustain the burden of proof imposed by his later date of application, Seeberger offered evidence tending to show a conception of the invention about May 1, 1895, coupled with diligence thereafter in perfecting the invention and reducing it to actual practice. Dodge relied upon the constructive reduction obtained by filing his application, and a stipulation of counsel to the effect "that on December 7, 1897, the subject-matter shown and described in the application of James M. Dodge, as originally filed January 22, 1898, was fully disclosed and explained by the said James M. Dodge to Henry Howson, of the firm of Howson & Howson of Philadelphia, attorneys for said J. M. Dodge, with instructions to proceed to prepare application for patent."

Regarding the evidence of Seeberger as sufficient to show diligence, the Examiner of Interferences awarded priority to him. On appeal to the Examiners-in-Chief this decision was reversed, and theirs, on further appeal, was affirmed by the Commissioner.

All agreed that Seeberger had shown his conception of the invention in May, 1895, thereby preceding Dodge's agreed date by more than two years, and the finding was acquiesced in by the latter. The determination of priority, therefore, was made to turn upon the question whether Seeberger was exercising diligence in reducing his invention to practice at the time that Dodge entered the field.

Before passing to its consideration it is necessary to dispose of a preliminary question suggested in the reasons of appeal.

Seeberger contended in the Patent Office, and renews the contention here, that the invention as claimed by him was not disclosed or claimed in the original application of Dodge, and was only introduced therein by amended claims made after the former's application had been filed, wherefore the latter is not entitled to the benefit of a constructive reduction to practice as of the date of filing. If well founded this would entitle Seeberger, who was the first to conceive, to the benefit, also, of the earlier reduction to practice, and inquiry into the question of his diligence would become unnecessary.

Ordinarily, where the point has been raised, whether the application of one of the parties was broad enough in the terms of its specification and claims to embrace the invention of the other, and especially where the invention is one of elaborate and complicated mechanism, the decisions of the expert tribunals of the Patent Office in respect of identity have, for obvious reasons, been accepted as conclusive. *Stone* v. *Pupin,* 19 App. D. C. 396, 400; *Schupphaus* v. *Stevens,* 17 App. D. C. 548, 555; *Ostergren* v. *Tripler,* 17 App. D. C. 557, 559; *Luger* v. *Browning,* 21 App. D. C. 201, 204; *Herman* v. *Fullman,* 23 App. D. C. 259, 265. On the other hand, it has been said that in extreme cases where palpable error has been committed such a decision might be reversed. *Swihart* v. *Mauldin,* 19 App. D. C. 570, 573. In a case of peculiar character, also, a decision has been reversed under which one party was permitted by amendment to broaden an application for a specific invention into a generic one and thereby dominate another and different specific invention contained in the later application of another. *Bechman* v. *Wood,* 15 App. D. C. 484, 504. Clearly, this is not one of the extreme cases above referred to, nor do the amendments of the claims of Dodge, that were from time to time permitted, bring it within the scope of the case last cited.

Dodge made no change in the description of his invention as set out in the specifications of his application, but was from time to time allowed to make amendments of his claims, most

of which were suggested in the course of examination to meet references to other patents.    Many of these were made before the application of Seeberger was filed.    Among them was the following, filed January 17, 1899:

"The combination in a moving platform or stairway, of sections, guides therefor, a main driving device at one end of the mechanism, and an auxiliary driving device engaging with the said sections between the two ends of the platform or stairway and at or near a point where the sections change direction of movement, substantially as described."

On January 24, 1902, the following was substituted for a rejected claim:

"The combination in a moving platform or stairway of moving sections, guides therefor, and a driving device engaging the sections between the two ends of the platform or stairway and at a point where they change direction of movement, said driving device also engaging the sections on the return run substantially as described."

On this an interference was declared with one Venn of whom the Otis Elevator Company was the assignee, this being the same company interested in the application of Seeberger.    This is identical with count 9 of the present interference.    Seeberger also amended his claims frequently between his date of filing and the declaration of interference; and both of the foregoing claims were added by him in April, 1902.    The last-named is substantially the same as count 8 of the issue of interference as declared, but has been dropped from the issue probably because it may have been determined in the proceeding to which Venn was a party.

These claims bear upon the point of chief contention which relates to the location and functions of the driving mechanism. It would prove unprofitable consumption of space to give in detail the further proceedings relating to both applications in the course of their progress in the Patent Office by way of avoiding or explaining references and including other amendments leading up to final allowance and the declaration of interference.

Having examined them all with the aid of an able argument directed to every point, we are of the opinion that the amendments of Dodge's claims were within the scope of his application and accompanying drawings, and were, therefore, properly allowed. *Hulett* v. *Long,* 15 App. D. C. 284, 290; *McBerty* v. *Cook,* 16 App. D. C. 133, 138.

This brings us to the consideration of the question of Seeberger's diligence. It having been determined that Dodge's application sufficiently disclosed the invention of the issue, the stipulation fixes his date of conception as of December 7, 1897. The burden is, therefore, upon Seeberger, as the first to conceive but the last to file, and who makes no claim of actual reduction to practice until long after December 7, 1897, to show that immediately before and upon that date he was exercising due diligence in perfecting his invention and attempting to reduce it to actual practice. That he conceived the invention about May 1, 1895, has been conceded. He had become interested in the subject of escalators, as these moving stairways have been called, before that time even, and had several constructions in mind. The art was not then a new one. As early as 1892, a patent (No. 479,864) for an escalator had been issued to one G. A. Wheeler, who was apparently the first person in the field. Seeberger himself has two patents,—No. 617,778, issued January 17, 1899, upon an application filed May 19, 1896, and No. 617,779, issued January 17, 1899, upon application filed December 23, 1895. Dodge also has a patent,—No. 598,772, issued February 8, 1898, upon an application filed August 9, 1897. G. A. Wheeler has another patent,—No. 617,788, issued January 17, 1899, upon an application filed April 16, 1897, of which Seeberger was the assignee of one half. In 1895 and 1896 Seeberger also worked on plans for what is called a double spiral escalator which he also attempted to introduce. It appears from the evidence that he had large drawings of this invention made as early as the spring, or summer at least, of 1896. These drawings would have served as the foundation of an application for patent at that time. Examining his own testimony, as a witness in the case, we do not find that anything

substantial remained to be done thereafter to perfect the invention, except to reduce it to practice.

To build such an escalator and put it in actual use, the working drawings would have to be made to suit the particular use,—for example, in a department store or an elevated railway, to both of which his attention was directed as presenting an inviting field of operation. Such adaptation of plans, however, had nothing to do with the changes in the device of the invention or its perfection as such. Granting that construction and test by actual use might have shown defects requiring improvement to perfect the invention, the fact remains that no such test was made until after Dodge had filed his application. On the other hand, the evidence tends to show that when constructed and applied to the intended public use the operation was satisfactory. We find no sufficient evidence on this point to excuse delay in applying for a patent after the drawings of the invention had been completed to the satisfaction of the inventor, in accordance with the doctrine of former decisions which hold that such delay does not show want of proper diligence where the inventor, instead of hurrying into the Patent Office with a crude and incomplete invention, prefers to wait in good faith while working to perfect it. *Yates* v. *Huson,* 8 App. D. C. 93, 98. See also *Agawam Woolen Co.* v. *Jordan,* 7 Wall. 583, 607, 19 L. ed. 177, 183; *Platt* v. *Shipley,* 11 App. D. C. 576, 583; *McCormick* v. *Cleal,* 12 App. D. C. 335, 342.

Seeberger testified at great length respecting his efforts to procure the construction of his device, including one, also, of the double spiral form, and its introduction into public use. This is substantially set forth in the decision of the Examiners-in-Chief, and has been reviewed in that of the Commissioner.

Without repeating it here, it is sufficient to say that we agree with them that it fails to show diligence in reduction to practice at the required time. The testimony shows that he was a man of means, and might have constructed an escalator had he undertaken to do so. Instead of this, his constant effort was to organize corporations, or to interest capital in other ways, for the

purpose of engaging in the general manufacture of escalators. He said as a witness:

"About the 1st of May, 1895, to the present time my every energy has been bent to the introduction and development of the escalator business."

Again he said:

"I realized from the beginning that, owing to the very great expense involved in building an escalator, that a liberal provision of capital should be made, and while I was ready to supply the capital necessary for a limited undertaking, was not in a position to provide money which I foresaw, and which experience has demonstrated, was requisite to fairly introduce the escalator subject to the public."

One having the first complete conception of an invention cannot hold the field against all comers by diligent efforts, merely, to organize and procure sufficient capital to engage in the manufacture of his device or mechanism for commercial purposes. This is a different thing from diligence in actual reduction to practice. *Wyman* v. *Donnelly,* 21 App. D. C. 81, 87. As said by the Commissioner in *Kasson* v. *Hetherington,* 88 Off. Gaz. 1157, "diligence will not wait on business arrangements." See *Paul* v. *Hess, ante,* 462.

Granting the contention that actual reduction to practice is preferable to that which is constructive, merely, as more to the interest of the public, and that reasonable indulgence ought to be extended to one pursuing that course in good faith, yet, when the construction of an experimental device involves so great cost and risk that an inventor, though possessed of sufficient means, may well hesitate to undertake the same entirely at his own expense, due diligence requires that he should then attempt to secure his right and promote the public interest by filing an application for a patent. *Dodge* v. *Fowler,* 11 App. D. C. 592, 599; *Platt* v. *Shipley,* 11 App. D. C. 576, 583; *Marvel* v. *Decker,* 13 App. D. C. 562, 565; *Cross* v. *Phillips,* 14 App. D. C. 228, 240.

The delay of Seeberger in this respect is without any reasonable excuse. As has been seen, he was prepared to make his

application in 1896, and had the means to discharge all the expenses likely to be incurred in the Patent Office. On December 23, 1895, and May 19, 1896, he filed applications upon other escalators of his invention, which ripened into patents; but waited in this case until October 22, 1901. As early as December 18, 1897, he visited the works of the Link Belt Engineering Company at Philadelphia and saw Dodge's traveling railway, though it seems that he did not examine its mechanism. Dodge, who showed him the stairway, told him, he says, that — "he had heard of my visit to the Link Belt Machinery Company's works in Chicago, and had concluded so much time had gone by that possibly I did not intend to build. That he had looked me up in the Patent Office and found no patents in my name, and, thinking the idea a good one, had developed it."

At that time, also, he said that he had some talk with Dodge about uniting their interests.

The failure of Seeberger to make an application before, and especially after seeing Dodge's device and hearing his statement, can only be attributed, in our opinion, to his confidence in the scope of the Wheeler patents. He owned one half of the later one of these by assignment made before issue, and in June, 1896, purchased a half interest in the earlier one,—No. 479,864. He made this last purchase because he had been advised that it was "necessary in order to control the field." And so essential to his interests did he regard the ownership of this patent that on August 13, 1896, he secured an option to purchase Wheeler's remaining interest, which was finally exercised in 1897. For obvious reasons, his confidence in the dominating scope of the Wheeler patents is no excuse for delay. *Platt* v. *Shipley,* 11 App. D. C. 576, 583.

Entertaining the opinion that Seeberger failed in the prosecution of his invention with the necessary diligence, the decision must be affirmed. It is so ordered; and the clerk is directed to certify the proceedings in this court to the Commissioner of Patents.                                                          *Affirmed.*

A motion by the appellant for a rehearing was denied.