46 CCPA

**Eugene O. KEIZER, Appellant,**

v.

**William E. BRADLEY, Appellee.**

**Patent Appeal No. 6399.**

United States Court of Customs and Patent Appeals.

June 30, 1959.

Rehearing Denied Oct. 6, 1959.

Leonard S. Lyon and Richard E. Lyon, Los Angeles, Cal. (Olin V. Mitchell and A. Russinoff, Princeton, N. J., of counsel), for appellant.

Allen V. Hazeltine, Thomas M. Ferrill, Jr., and Fordyce A. Bothwell, Philadelphia, Pa., for appellee.

Before WORLEY, Acting Chief Judge, and RICH, MARTIN and JOHNSON (retired), Judges.

RICH, Judge.

This appeal is in an interference between a patent application of William E. Bradley, Serial Number 208,993, filed February 2, 1951, assigned to Philco Corporation, and an application of Eugene O. Keizer, Serial Number 204,110, filed January 3, 1951, assigned to Radio Corporation of America. The Board of Patent Interferences awarded priority to Bradley, the junior party, basing its decision on a finding that Bradley had proved conception prior to Keizer and had maintained reasonable diligence throughout the critical period to the date of Bradley's constructive reduction to practice by filing his application. Appellant's sole contention here is that the board erred in holding that the junior party Bradley had been diligent.

Bradley introduced evidence to establish a conception date of December 13, 1949, Keizer indicating a conception date of March 16, 1950. Because of his one month later filing date, Bradley had the burden of proving diligence from just before Keizer's entry into the field, March 16, 1950, to Bradley's constructive reduction to practice, February 2, 1951, a ten and one-half month critical period.

The single count of the interference is:

" * * * In a color television system a color television receiver adapted to reproduce images in color in response to composite image signals having a given spectrum and having a plurality of components including a color subcarrier component whose amplitude is fixed during predetermined intervals and during other intervals is a function of color saturation of a plurality of color aspects, and a periodically recurrent synchronizing component depicting television picture scanning synchronizing information, said receiver comprising in combination: a signal amplifier for said composite signal; frequency discriminatory means connected with said amplifier for controlling the gain of said amplifier at said subcarrier component frequency to the relative exclusion of other composite signal frequencies; means connected with said amplifier for developing a control signal in accordance with the amplitude of said subcarrier component during said predetermined intervals; and means connected with said frequency discriminatory means and said last named means for controlling the gain of said amplifier at said subcarrier frequency in accordance with said control signal."

The invention involves color television receivers and relates to means for reduc-

ing the adverse effects on color reproduction of frequency-selective fading that sometimes occurs during signal transmission between transmitter and receiver. It is termed an automatic chroma control. In plain terms, the transmitted composite color television signal includes both a brightness component which operates over a given frequency range and a color component which operates over a different frequency range. Due to the fact that signals of different frequency often assume different transmission paths, interference may alter one component while the other is unaffected thereby.[1] This results in variations in the relative amplitude of the two components at the point of reception which cause defects in the color intensity of the reproduced television picture. The invention described by the count restores, in the receiver, the proper relative amplitude of these signal components.

This is accomplished in the following manner. In addition to the brightness and color components, the transmitted composite color signal includes deflection synchronizing and color synchronizing signals broadcast at frequencies corresponding to the brightness and color components respectively. These signals are in the form of pulses fixed in a known amplitude relationship at the transmitter. The automatic chroma control of the invention compares the relative amplitude of these pulses at the receiver to the ratio as transmitted to determine the extent of compensation needed to correct the brightness and color component relationship. It then controls the gain of the receiver in such manner that the proper balance is restored.

Appellant Keizer's contention that Bradley failed to prove the requisite diligence during the critical period is based upon three arguments: 1) since the major effort during the critical period was to perfect a complete color television receiver, diligence in this effort was not directed to the instant invention, 2)

there was a lack of proof of intent to reduce the invention to practice with reasonable promptness, and 3) there was no excuse for the delay in preparing and filing a patent application.

Two kinds of diligence are involved in this controversy. Appellant has dubbed them "attorney-diligence" and "engineering-diligence" and we will use these terms. We will first discuss engineering diligence, which refers to the Philco research and development work.

The record shows that the Philco research department worked continuously throughout the critical period on the construction of a complete color television receiver while little was done specifically regarding the automatic chroma control. Appellant asserts that this activity did not constitute the requisite diligence. Bradley, on the other hand, contends, and the board held, that he is excused from the usual requirement that the activity must be directed toward the invention *per se* because little could be done until a medium was provided for field testing the invention, such medium being an operative receiver. Bradley reasons that anything short of a test under actual operating conditions was inadequate to produce an actual reduction to practice due to the necessary interrelationship between the circuits of the invention and those of the rest of the receiver in which it was to operate. The record indicates that this was in the early period of development of a highly complex art. A great deal was unknown and there were many difficulties which could not be anticipated. The circumstances of this case, we feel, justified Bradley, who was Philco's Director of Research, in postponing the building and testing of his automatic chroma control until completion of a color television receiver in which it could be incorporated and tested. And since the record tends strongly to show that there was no other way to get such a receiver and that the work on the receiver was carried on with diligence,

1. Signal interference occurs due to many causes such as atmospheric effects, reflections from nearby objects such as buildings, and even swaying of the receiver antenna and leader wires.

that work can be relied on as showing diligence in reducing the invention to practice over the ten and a half month period here involved. We agree with Bradley and the board and find that the emphasis on the complete receiver development program during this period was not fatal to his claim of diligence.

Keizer's second argument is that even assuming, arguendo, that a field test was necessary to permit an actual reduction to practice, Bradley did not prove the existence of an intent promptly to reduce the invention to practice when the receiver reached a suitable stage of development.

Two witnesses, Bingley and Creamer, employees of Philco and both responsible to Bradley, testified to the effect that Bradley did have the continuing intention to embody the invention in the receiver upon completion and test thereof and then to field test it under normal operating conditions, although he was pressed with many other problems at the time. The record demonstrates, and we are cognizant of, the difficulties involved in bringing many parts together to create a new complex device such as a color television receiver. It is a formidable task requiring careful organization of research teams and delegation of authority. There are inevitable disagreements as to priority of projects. Under these conditions we cannot, as a matter of law, say that the same fixed and continuous intent is needed as may be required with an invention of a less complex nature.

It is true, as appellant points out, that the witnesses Bingley and Creamer were somewhat interested, and that close scrutiny should be exercised in examining testimony in such cases. However, we feel that this testimony, along with the corroborating recorded minutes of planning meetings, is sufficient to show a continuing intent to reduce to practice on the part of Bradley. In view of the type of problem that was involved, we hold that sufficient intent was established.

Appellant argues in the alternative that Bradley's intent as such has no bearing on the issue because the record fails to show that he exercised direct control over the receiver development program. The exact relationship which existed between Bradley and those who were responsible for the actual construction and testing of the television receiver does not appear in the record. However, it is clear that Bradley exercised a considerable influence upon the development program. Under these circumstances we hold that his indicated intention to carry the invention to an actual reduction to practice was sufficient to satisfy the requirement. The fact that the chroma control was incorporated in the receiver after it was completed would seem to confirm the existence of intent.

Appellant also contends that the board erred when it found that Bradley's actual reduction to practice had taken place shortly after Bradley filed his application. The point was raised by appellant even though there had been a prior constructive reduction to practice because of its asserted bearing on the intent question. Since we have found that the intent requirement has been satisfied, there is no further need to discuss the alleged actual reduction to practice.

Appellant relies heavily on the case of Fageol v. Midboe, 56 F.2d 867, 19 CCPA 1117, wherein the order of events was similar to those of the instant case. In the Fageol case, the development program concerned a complete motor bus while the invention in issue was a dual axle drive. This court held that there had been a failure to show diligence because of a lack of activity directed specifically to the drive while work proceeded upon the motor bus as a whole. The board distinguished the Fageol case on the ground that a vehicle suitable for testing the drive was a standard item of commerce and therefore easily available, while Philco had to develop a color television receiver to test the instant invention, and on the further ground that in the Fageol case several other drives were being considered while in the instant case there is no evidence tending to indicate that any other automatic chroma

control was known to Philco. Appellant contends that the board has made a "manifest error of law" in distinguishing this case due to "assumption and surmise." Specifically, appellant objects to the board's statement to the effect that other suitable vehicles were available for reducing the drive to practice when nothing substantiating this appeared in the Fageol opinion, and to the board's presumption that the other drives under consideration would have performed the same function as the drive in issue. As to the first point, we do not think the assumption of availability in 1932 of motor vehicles of the bus or truck type needed substantiating. It is a very insubstantial argument. We do not see that the second point is pertinent.

It is clear that in the Fageol case interest was shown in several arrangements of drives and there was lack of a showing of intent, during the critical period, to employ the *particular* drive of the count. We feel that the Fageol case is properly distinguishable on this point, since only the invention described in the count (though there were two embodiments) is found in the instant case; any intent to incorporate an automatic chroma control in the receiver necessarily had to be directed to Bradley's automatic chroma control.

■ Referring now to what appellant terms "attorney diligence," appellant contends that the delay in preparing and filing the patent application for the ten and a half month critical period could not be excused by the engineering activity directed toward the complete television receiver. This issue now appears moot since we have found that there was diligence by Bradley during the critical period. It is of no moment that the end of that period is fixed by a constructive, rather than an actual, reduction to practice. We see no reason, therefore, to go into the question of "attorney diligence." As long as Bradley was, as we have found, diligent in working actually to reduce his invention to practice, he was not under an obligation to file a patent application. The fact that he decided to do so does not change the situation.

Our conclusions in this case are: Bradley has established a conception date, December 13, 1949, antedating Keizer's March 16, 1950 date and Keizer no longer argues this point. There was no error in the decision of the Board of Patent Interferences that Bradley established reasonable diligence commencing prior to Keizer's entry into the field and continuing for the ten and a half months to his filing date on February 2, 1951, thus overcoming the presumption in favor of Keizer who filed a month earlier on January 3, 1951. Bradley is therefore entitled to the award of priority as to the subject matter of the count.

The decision of the Board of Patent Interferences is affirmed.

Affirmed.